Scott, J.
This case comes before us on a motion for Heave to file a petition in error, on proceedings of the district court of Jefferson county.
A petition was filed in that court, with a transcript of proceedings in a case prosecuted by the defendant in error in Jefferson common pleas, for divorce and alimony, on which errors were assigned. On the hearing, the district court affirmed the judgment •of the common pleas, gave judgment against the plaintiff in error for costs, and ordered a mandate to the common pleas, to carry the judgment into execution.
To reverse this judgment of the district court, the plaintiff asks leaveD to file a petition in error.
Counsel have agreed, “ that if the court, on hearing, grant leave ■to file the petition in error in this case, a formal issue of summons *67 and citation is waived, and appearance entered, so that the court may, at once, proceed to pronounce judgment.”
And the ease having been fully and ably argued by counsel, upon its merits, we shall proceed to _ consider and dispose of it, as upon hearing of the petition. The first question which presents itself in this case, is: Can a decree for divorce, or for divorce and alimony, be reviewed in Ohio ?
This question was first’brought before the former Supreme Court in bank, in the case of Bascom v. Bascom, 7 Ohio (pt. 2), 125. This was in 1836, when no right of appeal could exist in such cases, for the Supreme-Court had the sole jurisdiction of the subject-matter.
In that case, Lane, J., delivered the opinion of the court in the following emphatic language:
“ The statute of March 1, 1834, declares that all proceedings' under the act concerning marriages and divorces, shall be as in chancery. Under this law it is claimed that all the incidents of a suit in chancery attach to these proceedings, and among others, the right of review.
*“ It seems plain to us that such could not have been the [67 intention of the legislature. Where a divorce is granted, upon which one of the parties contracts new relations, and a third party acquires rights, it Can not be, that a process could be had to reverse a decree, the consequence of which would bo a severance of all those new relations. Such anomalous mischief can not be ingrafted on the practice of our courts, except by clear and explicit legislative enactment. That, we feel confident, can never take place.”
Subsequently, jurisdiction of divorce cases was conferred on the common pleas, and the statute then permitting appeals to the Supreme Court from all final judgments and decrees, a question as to the applicability of this provision to divorce cases arose upon an appeal by a third party, on whose lands the alimony allowed had been charged.
Judge Hitchcock, in delivering the opinion of the court sustaining the appeal as to the third party, says:
“ The first question which presents itself for consideration, is, whether the case is one which could be brought into this court by appeal ? Had it been a mere petition for divorce, or for divorce and alimony under the statute, no matter what the decision of the court of common pleas might have been, there could be no appeal. *68, 69 Although, the proceeding in such case is in form as in chancery, yet this court have long since decided, that when the decree has been made, there could be no review (Bascom v. Bascom, 7 Ohio, 125); and surely, if there could be no review, there could be no appeal.” Laughery v. Laughery, 15 Ohio, 405.
These cases may be regarded as settling the question that, as the law then stood in Ohio, the decision of the court on the hearing of a petition for divorce was final, and beyond the reach of judicial revision.
*How far, then, has this question been affected by the subsequent change of our constitution and laws ?
The plaintiff claims that this right of review is secured to him, first, by the common law, and, second, by the 16th section of our-present bill of rights. But the common law was recognized as well .under our former judicial system as the present, and the 16th section of the bill of rights is copied from the constitution of 1802.
Proceedings in divorce, or for alimony' alone, have ever been wholly regulated, in this state, by special statutes. The “act concerning divorce and alimony” now in force, was passed March 11, 1853, and provides, in the 16th section, “ That in case of petition for divorce, or petition for alimony alone, no appeal shall be allowed from any judgment or order of the court of common pleas to the district court.”
It is true that there is an apparent discrepancy between this section and the one immediately following, which reads thus: “In cases arising under the eleventh section of this act, either party may appeal from any final judgment or order of the court of common, pleas to the district court, as in other cases; but when such an appeal is taken by the petitioner, she shall not be required to give bond.” Now, as the eleventh section prescribes the mode of conducting the proceedings on a petition for alimony alone, the seventeenth section would seem to permit appeals in such cases, while the-sixteenth section expressly prohibits such appeals. But we are satisfied that the reference in the seventeenth section was intended to> be made, not to the eleventh, but to the fourteenth section. That a similar mistake occurs iifthe fifteenth section, is quite apparent; for, “cases where the petition is filed under the eleventh section” are-there mentioned as a class entirely distinct from cases where the 69] ^application is for alimony. Besides, the eleventh section does- *70 not provide for the filing of a petition in any case; it is the tenth section which authorizes a petition to be filed for alimony alone.
The whole act recognizes and provides for but three classes of ■cases: 1. Petitions for divorce, and, as incident thereto, alimony, where the husband is the aggressor; 2. Petitions for alimony alone; 3. Petitions which seek to enjoin the husband from wasting his wife’s property. Authority to file a petition in cases of the first class is given by the third section; in -cases of the second class, by the tenth section; and in cases of the third class, by the fourteenth section. The provisions of the fifteenth section were manifestly intended to apply to all these classes of cases. And while the seventeenth section was designed to permit either party to appeal from the final judgment or order of the court of common pleas in the third class of cases, the sixteenth section expressly declares, as to eases of the first or second class, “ no appeal shall be allowed to the district court."
This construction renders the whole act sensible, and its several parts consistent; and the sixteenth section is thus left to mean precisely what its language imports. Indeed, such has ever been the legislation of this state; for the act of 1843, which first gave to the common pleas concurrent jurisdiction with the Supreme Court, declares, “That in all cases” (whether of divorce, and alimony, or of alimony alone) “commenced in the court of common pleas, no appeal shall be obtained from the decree, but the same shall be final and conclusive.” 41 Ohio L. 64.
With full knowledge of the decisions of the Supreme Court denying the power of review, the general assembly of 1853 re-enacts the provision prohibiting appeal, and provides no other mode of revision. We think the inference *fair, that such revision was [70 not contemplated. Nor do we find in the code of civil procedure any thing to repel this inference.
That clause of the 602d section which declares that “ the provisions of this code shall apply after a judgment, order, or decree, heretofore or hereafter rendered, to the proceedings to enforce, vacate, modify or reverse it,” etc., would seem, from its very language, to'be limited in its application to such judgments, orders, and decrees, as might, independently of the code, have been vacated, modified, or reversed, by proceedings previously authorized. The Torm of the remedy, the mode of asserting rights previously exist *71 ing, is changed; but where no right of review previously existed, we think this section does not confer it.
But an examination of section 604, which declares that “until the legislature shall otherwise provide, this code shall not effect . . . proceedings under statutes relating to dower, divorce, and alimony,” etc., together with the consideration that the statute' specially regulating proceedings for divorce and alimony bears the same date with the code, will justify the conclusion that the whole subject-matter was intended to be excluded from the operation of the code. Besides, we find nothing in the “ act concerning divorce and alimony,” nor yet in the code of civil procedure, discriminating, as to the right of review, between the decree for divorce and the decree for alimony. The right, if conferred at all, is conferred by general terms, which include the one as well as the other; and yet we do not understand it to be claimed that that portion of the decree which annuls the marriage contract can be reversed.
Whether such discrimination might not properly be made, and a review of that part of the decree which relates to alimony and the custody of children, be permitted on terms which would secure the 71] rights of both partios, *may be a proper subject of legislative consideration. But we can not believe that a proper construction of existing laws would justify us in regarding the husband as forever released from the obligations and duties growing out of the marriage contract, by a decree which his own aggression has demanded, while the injured wife is left, without means, to contest, in protracted litigation, her right to a maintenance.
We are, therefore, of opinion that the district court of Jefferson county had no jurisdiction to review the decree or proceedings-in the case between these parties in the common pleas, and the judgment of the district court must therefore be reversed.
Bartley, C. J., and Swan, Brinkerhoee, and Bowen, JJ., concurred.